IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-02260-RBJ

A JUST CAUSE, a non-profit organization,
and KENDRICK BARNES, an individual,

      Plaintiffs,

v.

UNITED STATES OF AMERICA, and
DARLENE M. MARTINEZ,

      Defendants.

---

## ORDER

---

The case is before the Court on Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) [ECF No. 32]. For the reasons set forth herein, the motion is granted.

## FACTS

This case concerns a dispute about something that the presiding judge said but that was not recorded during a bench conference in a criminal case tried in this district in September 2011. In that case, *United States v. Banks, et al.*, No. 09CR266-CMA, six individuals had been indicted for conspiracy and various individual counts of mail and wire fraud -- 25 counts in all.[1]

---

[1] In deciding a motion to dismiss for failure to state a claim on which relief may be granted, courts may consider, in addition to the four corners of the complaint, matters of which courts may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Federal courts may take judicial notice of their own records and, in appropriate circumstances, proceedings in other courts. *St. Louis Baptist Temple, Inc. v. Federal Deposit*, 605 F.2d 1169, 1172 (10th Cir. 1979). A court need not accept as true a factual allegation plainly contrary to facts established by records of which the Court can take judicial notice. *Cf. GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997). In the present case I am taking judicial notice of certain records in the files of this court, including the files in the *Banks* case over which Hon. Christine M. Arguello presided and certain other records in the Office of the Clerk of Court.

The 17-day trial began on September 26, 2011 and concluded on October 20, 2011, resulting in one or more guilty verdicts against each defendant.  On August 14, 2012 the court sentenced the defendants to varying terms of between 87 and 135 months in prison plus three years of supervised release and restitution of $5,018,959.66.  Defendants' appeals are presently pending in the United States Court of Appeals for the Tenth Circuit.

**The Bench Conference**

October 11, 2011 was the eleventh day of trial in the criminal case.  Following the testimony of three defense witnesses, Judge Arguello advised the defendants that they could call their next witness.  Transcript [ECF No. 557] at 53.  Defendant Gary Walker, who like the other defendants was representing himself *pro se*, asked to approach the bench.  The transcript reads as follows:

> THE COURT:  Defense may call its next witness.
>
> MR. WALKER:  Your Honor, the defense – can we approach?
>
> THE COURT:  You may.
>
> (A bench conference is had, and the following is had outside the hearing of the jury.)
>
> MR. WALKER:  Our next witness is scheduled at 10:30.  We anticipated – it's going quicker.
>
> THE COURT:  That is unacceptable.  I told you to have witnesses here.  We are not going to recess again until 10:30.  That is 40 minutes away.  I told you to be prepared.  They need to be here.  Your witnesses are not taking long.  We are going to go. The eight you named, you still have time.  So you better get them here.  So call your next witness.
>
> MR. WALKER:  Yes, Your Honor.
>
> (The following is had in the hearing of the jury.)
>
> MR. WALKER:  Your Honor, we would like to check to see if Mr. Reese is in the witness room.
>
> THE COURT:  You may.
>
> MR. WALKER:  Your Honor, defense calls Ken Barnes.

Tr. at 53–54.

Kendrick Barnes was one of the defendants in the criminal case and is a plaintiff in the present case. After Mr. Walker finished his questions of Mr. Barnes, defendants David Banks and Demetrius Harper continued the direct examination. Tr. at 68–78. The last two defendants asked no questions, and Mr. Barnes declined to make any further statement beyond what had been asked of him. *Id.* at 78.

The morning break followed, after which government counsel Matthew Kirsch (outside the presence of the jury) asked the court to make it clear on the record that all parties "had every reason to believe that Mr. Barnes intended to testify no matter what happened in this case . . . regardless of the fact that the defense otherwise ran out of witnesses this morning." Tr. at 79. The following colloquy then occurred:

> THE COURT: Well, I assume that because they put him on the stand that that was his intent to testify.
>
> MR. KIRSCH: So did we, Your Honor.
>
> MR. BANKS: Actually, Your Honor, it was something we felt like we had to do, to be honest with you. So we made that decision in an ad hoc type of fashion. So, just for the record.
>
> THE COURT: You were told last week, both days when we ran out of witnesses, that you better have your witnesses ready to go. I never told you you had to put anybody on the stand today other than you needed a witness. So you made the decision to put Mr. Barnes on the stand. He is listed as a may-call witness. That is my understanding, it was your intent, it was Mr. Barnes' intent to testify.
>
> MR. WALKER: Well, Your Honor, at this point –
>
> THE COURT: And I will expect, as we move forward, we are going to have this day filled with witnesses. So you better get your witnesses lined up.
>
> MR. WALKER: Yes, Your Honor. We have a witness running late now. He should already be here. He is running late. In fact, we have two who are running late. Our intention is not to put any other defendants on the stand, and so we would be forced to wait for them.
>
> THE COURT: No. We are not waiting. I told you, you have your witnesses here ready to testify, and if you don't have them filled, I will not continue.

> MR. WALKER:  Well, Your Honor, it probably is best we don't continue because the other 5 co-defendants do not plan to testify at this point in time.  We feel it would be coerced at this point.
>
> THE COURT:  So are you telling me you are not testifying?  None of you are going to testify?
>
> MR. WALKER:  We were reserving that right to make that decision.
>
> THE COURT:  Well, then you better have your witnesses here, because we are going forward – and if you don't go forward, that means you are not going to testify.  I am not going to recess.  The jury has been inconvenienced twice now, having to go home early, having to be excused for lunch, to come back for a 5-minute witness, and then going home for the rest of the day.  So, your witnesses, you better get them here.

Tr. at 79–81.

After some additional colloquy between the court and Mr. Walker concerning upcoming defense witnesses, and the court's reiteration that it would move forward with the trial if the defense did not have their witnesses ready to go, the following exchange took place:

> MR. WALKER:  All right, Your Honor.  Given that, and given the instruction to the jury to either put one of those people on or to put one of us on, we put Mr. Barnes on, who we had not –
>
> THE COURT:  No, I gave no instruction to the jury.
>
> MR. WALKER:  I'm sorry, to us.
>
> THE COURT:  Privately at the bench, I said you need to call your next witness.
>
> MR. WALKER:  And you also said if one of them wasn't available, we had to put one of us on.
>
> THE COURT:  I didn't say you had to put one of you on.  I said if you intended to testify, then one of you should take the stand, because we weren't going to continue.
>
> MR. WALKER:  Your Honor, with all due respect, I don't remember the phrase, "if one of us was going to take the stand."
>
> THE COURT:  I don't know what my exact phrasing was, but the fact of the matter is, I did not direct you to do anything, Mr. Walker.  You chose to put a witness on the stand.  He has freely testified.  You can make your record for whatever you want.  But you all gave opening statements saying you were going to put this – you were going to have this information on there, so you chose to call him.

That's fine.  You can make whatever record you want for appeal, but I never told you you had to put one of you on the stand.  I said we are moving forward, call your next witness.

MR. WALKER:  I would like to make this statement for the record.  When we approached the bench, your words to us were "Put one of your witnesses on or one of the defendants will have to testify."  In response to those statements and our understanding, we put Mr. Barnes on, who we had not made a decision on whether or not he would testify at this point.

And at this point we are not – we are not – have not made a decision for any of the other 5 co-defendants to testify.  And at that point we had not made a decision for Mr. Barnes to testify.  So at this point –

THE COURT:  Now, earlier, as I recall in this trial, you said all six of you intended to testify.

MR. WALKER:  Your Honor, we were evaluating that, and had not made a final decision.

THE COURT:  You told me you all intended to testify.

MR. WALKER:  Well, Your Honor, I don't remember when we made that statement, but we said we were on the may-call.

THE COURT:  At the time, I will just say, if your understanding was that I directed you to put one of you on, you should have made that on the record before you put Mr. Barnes on the stand.

MR. WALKER:  Well, Your Honor, I am saying for the record that at that point, we felt compelled to put Mr. Barnes on the stand, given your instruction.  That was not our free will decision at that point.  And that's for the record.  And we would also motion the Court that we withdraw that testimony and prevent cross-examination –

THE COURT:  Denied.

MR. WALKER:  -- by the Government.

THE COURT:  Denied.  All right.  Ms. Seeman, please bring in the jury.

Tr. at 107–10.

The jury was brought in, and the government cross-examined Mr. Barnes.  However, while the cross-examination was in progress, Mr. Walker interrupted an answer and stated that he was moving that Mr. Barnes "plead the Fifth Amendment" and asking for "a retrial based on our . . . being forced to testify."  Tr. at 129.  Another bench conference followed, during which the court explained that Mr. Walker was not Mr. Barnes' lawyer and could not give him advice,

although Mr. Barnes could assert that right.  The government objected to the court's allowing

Mr. Barnes to plead the Fifth in the middle of its cross-examination, but the court responded that

it was not going to force Mr. Barnes to testify if he didn't want to.  Tr. at 130.

Following a lunch break, Mr. Barnes informed the court that he objected to further

testimony and wished to assert his privilege not to incriminate himself.  He told the court that he

had not been advised of his Fifth Amendment rights prior to testifying, and that he had taken the

stand because "[y]ou said one of us has to take the stand."  Tr. at 136–37.  The court said that

Mr. Barnes had volunteered to take the stand and asked why he was the one who did.  Mr.

Barnes responded that someone had to take the stand because the court had said so.  The court

again denied that characterization of her instruction and again asked him why he took the stand.

Mr. Barnes responded that "I was compelled to take the stand from our discussion up at the

bench, as we approached the bench."  Tr. at 137.  Mr. Walker then announced that he had

suffered "extreme prejudice" as a result of the court's "compelling of one of my co-defendants to

testify."  *Id.*  The court again denied compelling Mr. Barnes to testify.  Tr. at 138.

Moments later, Mr. Walker suggested that the transcript of the bench conference would

resolve the issue.  The court responded that it understood that the transcript had already been

provided to him, but Mr. Walker said that the transcript was of the wrong bench conference.

When advised that it was the only bench conference at 9:55 a.m., and that it had occurred before

Mr. Barnes was called to the stand, Mr. Walker indicated that the bench conference had not been

transcribed in its entirety.  Mr. Banks asked to see a transcript of an earlier bench conference to

verify that statements the defendants attributed to the court were in fact made, and the court

advised that that transcript would be provided at the end of the day.  Tr. at 138–40.

Mr. Barnes moved for a mistrial on the ground that the court had compelled him to testify.  Tr. at 146.  After further discussion as to whether the court had or had not compelled the defendants to call one of their own as a witness, the court denied the motion for a mistrial.  Tr. at 150–53.  The government then proposed that the court give "curative instructions," one striking and instructing the jury to disregard Mr. Barnes' testimony in light of his decision to assert his Fifth Amendment rights and the other reminding them that statements or objections by attorneys or defendants who are not testifying should not be considered.  Tr. at 153–54.  Mr. Walker responded that the defendants wished to see the transcript of the bench conference before proceeding.  Tr. at 154.  The court instructed the court reporter, Darlene M. Martinez, to give the defendants a transcript of the bench conference.  Tr. at 155.  The government argued, and the court agreed, that it was up to Mr. Barnes to decide whether to strike his testimony or to proceed with cross-examination.  Tr. at 157.  Mr. Barnes then indicated that he did not want a curative instruction and instead wished to finish the cross-examination while reserving his right to plead the Fifth.  Tr. at 156–57, 161.  When government counsel resumed his cross-examination, Mr. Barnes pled the Fifth in response to every remaining question.  Tr. at 162–68.

Judge Arguello later indicated in a minute order that the parties were provided an unedited copy of the transcript of the bench conference on the same day, October 11, 2011, and that the reporter's original notes were on file at the Clerk's Office and could be inspected by any member of the public.  [ECF No. 633].  The plaintiffs in the present case have disputed this minute order and denied that they were provided with a copy of the unedited transcript at that time.  Second Amended Complaint [ECF No. 30 in the present case] at ¶ 17.  That dispute is not one that I can resolve by taking judicial notice, and for present purposes I will assume the truth of the plaintiffs' allegation.

In any event, the transcript (edited and unedited) does not resolve the dispute. The final transcript is quoted *supra* at page 2 of this Order in its entirety. No statement like that which was recalled by the court or that which was recalled by the defendants appears in the transcript. As I will discuss later, the unedited version of the transcript (*see* Exhibits A, B, and C to this Order) similarly does not contain either version of what Judge Arguello is purported to have said.

However, there is no dispute that something was said that does not appear in the transcript. Judge Arguello addressed the incompleteness of the transcript of the bench conference in a written order issued on June 28, 2012 denying five defendants' motions for a judgment of acquittal or new trial based upon the alleged Fifth Amendment violation. [ECF No. 753]. The court disputed defendants' recollection that she had ordered any defendant to testify and reiterated that she had advised the defendants that if they intended to testify, one of them should take the stand, because she was not going to continue to wait for other witnesses to be available. "Unfortunately," the court wrote, "this portion of the sidebar was not transcribed by the reporter." *Id.* at 14. The judge offered no explanation at that time as to why one of her statements was not recorded.

The court returned to the subject several months later. The defendants had tendered a proposed "stipulation" to settle the transcript pursuant to Fed. R. App. P. 10(c). [ECF No. 832]. They stated that they recalled "comments made by this Court that if their witnesses were not immediately available that one of the defendants would have to testify; if they did not have someone to testify, then this Court would rest their case." *Id.* at 2. In a written order issued on October 16, 2012, Judge Arguello rejected the proposed stipulation. [ECF No. 846]. She again acknowledged that a statement she had made was not recorded: "For whatever reason, whether the parties spoke too far from the microphone or the court reporter took off her headphones, the

court reporter did not hear everything that was said at the sidebar and therefore did not transcribe anything besides what is contained in the edited transcript." *Id.* at 3.  She reiterated that the defendants had been provided with everything in the court's possession, referring back to her order denying a defense motion for reconsideration and her order denying defendant Banks' motion for judgment of acquittal. *Id.* at 3 n.2.  By way of settling the record, the judge repeated what she had said in denying the motion for judgment of acquittal: "I said if you intended to testify, then one of you should take the stand because we weren't going to continue." *Id.* at 5.

**The Present Case**

This case was originally filed in the Denver District Court but was removed to this Court on diversity grounds.  The original plaintiff was "A Just Cause," said to be a 501(c)(3) non-profit organization doing business in Colorado Springs.  The original defendant was Ms. Martinez, the court reporter who recorded and transcribed the criminal trial.  The gist of the original Complaint [ECF No. 4][2] was that the plaintiff had paid Ms. Martinez $9,450 for a transcript of the trial, but Ms. Martinez had not produced a complete transcript.  Plaintiff alleged that Ms. Martinez "failed to provide a transcript of the trial proceeding in *United States v. Banks, et al.*, case number 09CR266." *Id.* at ¶ 14.  The Complaint was arguably somewhat confusing.  In one paragraph it referred to the "tort, which is the basis of this action," *id.* at ¶ 3, but the only claim for relief was for breach of contract. *Id.* at ¶¶ 12–16.

The government moved to substitute the United States for Ms. Martinez as the defendant "to the extent the Complaint alleges a common law tort action against Ms. Martinez arising out of actions taken within the scope of her employment as an employee of the United States." [ECF

---

[2] This citation to the docket, along with future citations, refers to the docket in the present action, not the criminal case.

No. 7]. The Court granted the motion and dismissed the case with prejudice as to Ms. Martinez to the extent that she was being sued for common law torts. [ECF No. 8].

A Just Cause then retained new counsel and filed a First Amended Complaint [ECF No. 13]. The United States and Ms. Martinez were named as Defendants. Plaintiff alleged that during the October 11, 2011 bench conference "[t]he court admonished the defendants for failing to have witnesses available to testify and informed them that if the defense did not have a witness ready to testify immediately, one of the defendants would have to testify, otherwise, the court would rest the defense case." *Id.* at ¶ 8. Plaintiff further alleged that, following the bench conference, Mr. Barnes took the stand and testified for approximately 37 minutes until a co-defendant realized that there had been a Fifth Amendment violation and lodged an objection, following which the defendants moved to withdraw Mr. Barnes' testimony on the ground that the court had compelled him to testify. *Id.* at ¶ 10. The First Amended Complaint repeated the allegation that Ms. Martinez had failed to produce a complete transcript. *Id.* at ¶ 13. But it added allegations that Ms. Martinez had not filed her original shorthand notes with the Clerk of Court; that no alternative method of reporting the trial proceedings has been provided; and that the record cannot be adequately reconstructed. *Id.* at ¶¶ 26–27. The First Amended Complaint asserted claims of breach of contract, breach of statutory duty, constitutional violation pursuant to *Bivens*, and negligence.

Defendants filed their first motion to dismiss under Rules 12(b)(1) and 12(b)(6). Before this Court addressed the motion, however, it held a scheduling conference on January 10, 2014. During the conference I advised counsel for the parties of my understanding that a court reporter's notes (meaning the marks produced by the reporter's machine that are not readable by a layperson) are filed with the Clerk's Office; that the computer generates an unedited rough

draft of a transcript from the notes; that a court reporter writes over the unedited draft when he or she prepares a final transcript; but that a duplicate of the unedited version can still be produced from the notes; and that it could therefore be determined definitively in the *Banks* case whether the court reporter altered something between when it was initially recorded and when it became final. Transcript of Scheduling Conference [ECF No. 29] at 5–8. Plaintiff's counsel seemed to indicate that he agreed with the Court's understanding. *Id.* at 12.

Following the scheduling conference, A Just Cause filed a Second Amended Complaint. [ECF No. 30]. In this version Kendrick Barnes, one of the six *Banks* defendants and the one who testified during the criminal trial, was added as a plaintiff. Notwithstanding the discussion at the scheduling conference about the filing of reporters' notes and the ability to generate an unedited transcript from the notes, the allegations about Ms. Martinez in this new version are even stronger: "Ms. Martinez destroyed the unedited version of the transcripts and failed to file her original shorthand notes or other original records with the clerk. As such, her original notes or other original records were not available in the office of the clerk for inspection." *Id.* at ¶ 18. The Second Amended Complaint did, however, strike one of the four previous causes of action: breach of statutory duty. The three remaining claims are for breach of contract, constitutional violation pursuant to *Bivens*, and negligence. *See id.* at ¶¶ 19–51.

Defendants moved to dismiss the Second Amended Complaint, and that is the motion addressed in this Order. But in preparing this Order, I decided to investigate further, once again by taking judicial notice of the records of the court. Specifically, I obtained from the Clerk's Office a copy of Ms. Martinez's original notes of the disputed bench conference, which is attached to this Order as Exhibit A. I obtained a print out of the unedited transcript of the bench conference, generated from the notes. It is attached as Exhibit B. I also obtained a print out of

the screen of the monitor of Judge Arguello's courtroom deputy, which shows what was displayed via the real-time feed as the bench conference occurred.  This is attached as Exhibit C.

I cannot, of course, read the notes.  But anyone can read the unedited transcript (Ex. B) and compare it to the final, official transcript.  The comparison plainly demonstrates that the reporter made no substantive changes in her preparation of the final transcript.  The courtroom deputy's screen, as I would have expected, is almost identical to the unedited transcript.  The only difference is that the computer substituted "Mr. Walker" for "Walk walk" by translating "Walk walk" from the reporter's dictionary.  The significance of the courtroom deputy's screen is that it prints out a continuous indication of the time when the recording was made.  There is no time gap, which potentially would be present if Ms. Martinez had deleted something from her original recording.

As I have said, it is undisputed that Judge Arguello said something that does not appear in the transcript – either the unedited or the final version.  I do not know what she said.  The *Banks* defendants' and Judge Arguello's respective recollections of what was said are set out in the record of the criminal case, and the appellate court will determine what conclusions to draw. But I can say some things with certainty.  First, the plaintiffs have not alleged that Ms. Martinez intentionally failed to record something that she heard.  Second, the plaintiffs have not alleged that Ms. Martinez deleted anything from what she recorded (and the attached documents tend to confirm that she did not).  Third, the notes were preserved and filed with the Clerk's Office. Fourth, a duplicate of the unedited transcript can be produced from the notes.  Fifth, there is no substantive difference between the unedited transcript and the final, official version.  There is, therefore, no "missing transcript," and nothing relevant to what occurred during the bench conference has been destroyed.

As noted above, the Second Amended Complaint asserts three claims: (1) breach of contract; (2) violation of Plaintiffs' constitutional rights (a *Bivens* claim); and (3) negligence. [ECF No. 30 at ¶¶ 19–51]. I turn now to the three claims and to Defendants' motion to dismiss all three. The issues have been fully briefed.

## ANALYSIS

## I.   <u>FIRST CLAIM: BREACH OF CONTRACT.</u>

A Just Cause alleges that it contracted with Ms. Martinez "to provide stenography services for the entire trial proceedings" in the criminal case, but because the transcript omits a statement made by Judge Arguello during the bench conference that occurred at approximately 9:55 a.m. on October 11, 2011, Ms. Martinez breached the contract. It claims damages for itself and for Mr. Barnes as a third-party beneficiary of the contract, against both defendants, in the amount paid for the transcript, $9,450.

The problem is that this claim misconceives the role and responsibility of a court reporter. Neither A Just Cause nor any other party to a federal court case engages the reporter to provide stenography services for the proceedings. The reporter is an employee of the federal government. She has a statutory duty to record the proceedings. Specifically, a reporter's duty under the Court Reporters Act is to record the proceedings, including bench conferences, verbatim. 28 U.S.C. § 753(b). No request by or contract with a party is required. *United States v. Haber*, 251 F.3d 881, 889 (10th Cir. 2001). The same statute requires reporters to transcribe the original records or any part thereof at the request of a party who has agreed to pay the fee therefor. That is what A Just Cause contracted for here, and that is what Ms. Martinez delivered – a transcript of the original record.

Whether the fact that one of the judge's statements was not recorded was the reporter's fault, or the judge's fault, or no one's fault, is a matter on which I express no opinion. Certainly the duty to record proceedings verbatim requires reporters to record what transpires "as accurately as possible." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). But we are dealing with human beings attempting to accomplish the difficult job of getting everything down, no matter how inaudible a speaker might be. In any event, I conclude as a matter of law that the undisputed or at least indisputable facts here do not support a claim sounding in breach of contract.[3]

## II.      SECOND CLAIM: CONSTITUTIONAL VIOLATION/BIVENS.

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001). In their Second Claim in the Second Amended Complaint plaintiffs assert a *Bivens* claim solely against Ms. Martinez in her individual capacity. They allege that her failure to record the statement they attribute to Judge Arguello during their criminal trial "violated a 'clearly established' constitutional right, namely the right to adequate review of the criminal convictions in the underlying case, *i.e.*, a sufficiently complete record, and the right to timely pursue an appeal." [ECF No. 30 at ¶ 32].

In further explanation, plaintiffs allege that "the criminal defendants in the underlying action including Plaintiff Kendrick Barnes have suffered substantial damages and have been deprived of their constitutional due process rights including an inordinate delay in having their appeals decided." *Id.* at ¶ 34. Plaintiffs add that "A Just Cause has incurred an economic

---

[3] Because of this disposition of the contract claim, I do not reach or decide whether Ms. Martinez could be considered to have entered into the contract with A Just Cause in her individual capacity.

detriment, a waste of its limited resources, and a frustration of its purpose of promoting accountability in the judicial process." *Id.* at ¶ 35.

Among other arguments, defendants ask that I not extend *Bivens* beyond the three circumstances in which the Supreme Court has applied it: alleged Fourth Amendment violations by federal officers, alleged violations of the equal protection component of the Due Process Clause of the Fifth Amendment; and alleged Eighth Amendment violations. [ECF No. 32 at 11–12]. I need not reach or decide that issue. It is enough to conclude, as I do, that the plaintiffs fail properly to plead a *Bivens* claim under Rule 12(b)(6).

The Supreme Court has held that negligent acts that cause unintended deprivations of life, liberty, or property are not actionable under § 1983 or *Bivens*. Plaintiffs allege that "[b]ecause of Ms. Martinez's failure accurately to transcribe and timely to produce a complete copy of the trial transcripts, the criminal defendants in the underlying action including Plaintiff Kendrick Barnes have . . . been deprived of their constitutional due process rights including an inordinate delay in having their appeals decided." Second Amended Complaint [ECF No. 30] at ¶ 34. But at no point do the plaintiffs allege that Ms. Martinez acted intentionally or deliberately when she failed to record the statement at issue. Rather, their claims sound in negligence; in fact, one of the three causes of action asserted against Ms. Martinez is for negligence in failing to record the bench conference verbatim. *Id.* at ¶¶ 36–51.

In 1981, the Supreme Court heard and decided *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). The case involved a state prison inmate who brought a § 1983 action against prison officials, alleging a constitutional violation (deprivation of property without due process) arising from the officials' negligent acts. *Id.* at 530. Justice Rehnquist, writing for the Court, held that mere negligence could support a claim

for relief under § 1983. *Id.* at 534–35. He based his decision on the text of the statute, which does not require a particular state of mind before a deprivation becomes actionable. *Id.*

Five years later the Court reversed itself, overruling *Parratt* in *Daniels v. Williams*, 474 U.S. 327 (1986). Justice Rehnquist once again delivered the opinion of the Court. This time, he concluded that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328 (emphasis in original). In the case, a state inmate sought to recover damages for back and ankle injuries allegedly sustained when he slipped on a pillow negligently left on the stairs by a prison official. *Id.* The Court found that the claim was not actionable under § 1983. In reexamining its earlier position in *Parratt*, the Court found that injuries arising from negligent conduct could not be considered a "deprivation in the *constitutional sense*." *Id.* at 330 (citing *Parratt*, 451 U.S. at 548 (Powell, J., concurring in the result)) (emphasis in original). "Not only does the word 'deprive' in the Due Process Clause connote more than a negligent act, but we should not 'open the federal courts to lawsuits where there has been no affirmative abuse of power.'" *Id.* (citing *Parratt*, 451 U.S. at 548–49 (Powell, J., concurring in the result)). The Court "overrule[d] *Parratt* to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* at 330–31.

This rule applies equally in *Bivens* actions brought under the Due Process Clause of the Fifth Amendment. *See Schweiker v. Chilicky*, 487 U.S. 412, 447 (1988) ("Moreover, in order to prevail in any *Bivens* action, recipients such as respondents must . . . prove a deliberate abuse of governmental power rather than mere negligence . . . ."); *see also McKinney v. Revell*, 364 F. App'x 430, 431–32 (10th Cir. 2010) (unpublished) (holding that because the plaintiff, a federal inmate, "does not assert an intentional loss or destruction of his property," but instead asserts

mere negligence, "his [*Bivens*] allegations fall short of supporting a due process claim").

Because the *Bivens* action is based on Ms. Martinez's accidental failure to record the bench

conference verbatim, any alleged deprivation was negligently procured and unintentional at

best.[4]

## III.    **THIRD CLAIM: NEGLIGENCE.**

Plaintiffs' Third Claim, asserted against the United States and against Ms. Martinez in

her individual and official capacities, alleges that Ms. Martinez negligently performed her

statutory duties under 28 U.S.C. § 753(b) by (1) failing to record the bench conference on

October 11, 2011 verbatim; (2) failing to transcribe and to provide a transcript of the proceeding

to A Just Cause; and (3) failing to file her notes with the Clerk's Office.   Second Amended

Complaint [ECF No. 30] ¶¶ 44–46.   The second and third arguments were discussed above.   It is

simply untrue that Ms. Martinez failed to file her notes with the Clerk's Office or failed to

provide a transcript of the proceedings as recorded.   The Court has taken judicial notice of

records in the Clerk's Office that address those issues.   For the reasons that follow, I also am not

---

[4]   Given this ruling, I need not further address Ms. Martinez's "qualified immunity" argument.   I will add, however, that even if I were convinced that a *Bivens* claim could be asserted on these facts, I would conclude that plaintiffs lack standing to assert it.   For one thing, plaintiffs have not plausibly alleged that they suffered an injury in fact.   *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).   The Tenth Circuit has not ruled on the merits of the *Banks* appeal, nor have plaintiffs provided more than a conclusory (and implausible) allegation that Ms. Martinez's failure to record a statement during the bench conference has caused a delay in the processing of the appeal.   There are additional reasons to doubt A Just Cause's standing, in particular.   In order for it to establish "associational standing" it must show, among other things, that its members would otherwise have standing in their own right.   *Friends of the Earth, Inc. v. Laidlaw*, 526 U.S. 167, 181 (2000) (citing *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343 (1977)).   But A Just Cause has given me no reason to suspect that its members (other than the six *Banks* defendants themselves) might have standing in their own right to litigate the due process rights of the *Banks* defendants.   Nor does the organization's mission to promote accountability in the justice system give it standing to pursue a *Bivens* claim in its own right.   It has not identified any liberty or property interest of its own that would grant it due process rights in this situation.   Its theory would accord it standing to file suits asserting violations of its alleged constitutional rights any time it felt that a judge, or a prosecutor, or a defense attorney, or others participating in the criminal justice system had done something that A Just Cause considered to be improper.   No authorities have been cited that would extend the concept of standing to that extreme.

persuaded that Ms. Martinez's failure to record the bench conference completely "verbatim" supports an actionable negligence claim.

**A.  The Negligence Claim Against Ms. Martinez Individually.**

Plaintiffs' assertion of a negligence claim against Ms. Martinez in her individual capacity has been previously addressed by this Court.  In its Order of August 26, 2013 the Court granted the government's motion to substitute the United States for Ms. Martinez to the extent plaintiffs were asserting a tort claim.  [ECF No. 8].  The Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., provides that upon certification by the Attorney General or his delegated representative that a federal employee was acting within the scope of her employment at the time of the incident out of which the claim arose, any civil action arising out of the incident must be deemed an action against the United States, and the United States must be substituted as the sole defendant as to that claim.  28 U.S.C. § 2679(d)(1).  Such a certification was provided here, and the substitution of the United States was ordered by this Court.  The order expressly states, "[T]he Complaint shall be and hereby is dismissed *with prejudice* as to the defendant Darlene M. Martinez to the extent she has been sued for common law torts."  *Id.* at 1–2 (emphasis added).

Notwithstanding that Order, plaintiffs have chosen to reassert the same negligence claim against Ms. Martinez in their Second Amended Complaint.  The Court repeats: the United States has been substituted as the party defendant to this tort claim.  The plaintiffs' negligence claim asserted against Ms. Martinez has been and is dismissed with prejudice.

**B.  The Negligence Claim Against the United States.**

As for the claim against the United States, defendants make two arguments: first, plaintiffs have failed to state a claim upon which relief can be granted because the Federal Tort Claims Act ("FTCA") does not provide redress for breaches of federal statutory duties; second,

in the alternative, the plaintiffs have not exhausted their administrative remedies as required by

the FTCA.  I do not agree that plaintiffs have failed to exhaust their administrative remedies.[5]

But I do conclude that plaintiffs have not established that they can pursue a negligence claim

against the United States.

The Federal Tort Claims Act ("FTCA") is a waiver of sovereign immunity.  It provides in

pertinent part that "[t]he United States shall be liable [on tort claims] in the same manner and to

the same extent as a private individual under like circumstances, but shall not be liable for

interest prior to judgment or for punitive damages."  28 U.S.C. § 2674.

Plaintiffs here allege that Ms. Martinez committed the tort of negligence when she

breached her duty under the Court Reporters Act, 28 U.S.C. § 753(b), to record all court

proceedings verbatim.  Second Amended Complaint [ECF No. 30] ¶¶39, 40–46.  But the FTCA

does not waive immunity as to any and all tort suits arising from the breach of a duty created by

a federal statute.  Rather, "where a negligence claim is based on violation of a federal statute or

regulation, no claim will lie under the FTCA in the absence of some other duty under the

applicable state law."  *Klepper v. City of Milford, Kansas*, 825 F.2d 1440, 1448 (10th Cir. 1987).

---

[5] Defendants assert that plaintiffs failed to present their claim to the appropriate federal agency and obtain
a denial before filing suit, as required by the FTCA.  28 U.S.C. § 2675(a).  Defendants identify the
Administrative Office of the United States Courts ("the AO") as the appropriate federal agency for that
purpose.  But in response, plaintiffs presented copies of letters that A Just Cause has sent to politicians
and federal agencies complaining about the allegedly missing or destroyed transcript in the *Banks* case,
including a letter from Mr. Thurman to the Attorney General of the United States.  [ECF No. 35-2].  The
Attorney General's Office responded that the letter could better be answered by the AO and referred the
letter to that office for review and direct reply.  [ECF No. 35-4].  The Director of the AO then sent a letter
to Mr. Thurman dated October 4, 2013 in which he advised that the AO has no supervisory authority over
staff court reporters in the federal courts.  [ECF No. 35-6].  Rather, "[t]he reporters shall be subject to the
supervision of the appointing court and the Judicial Conference in the performance of their duties,
including dealings with parties requesting transcripts."  *Id.*  Thus, if AO was the correct agency to notify,
I find that the plaintiffs exhausted that possible administrative remedy.  If, as the AO's letter suggested,
the correct entity was the appointing court, then I am satisfied that defendants have exhausted that
possible remedy as well.  The views of the plaintiffs are well known to the Clerk's Office in this district.
Requiring the plaintiffs to send another written communication to the Court or to the Judicial Conference
at this point would be busywork with no meaningful purpose.

In other words, the FTCA makes the United States liable for negligence only "in the same manner and to the same extent as a private individual under like circumstances . . . in accordance with the law of the place where the act or omission occurred." *Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995) (citations and internal quotation marks omitted). "Even if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons." *Id.*; *see also United States v. Agronics, Inc.*, 164 F.3d 1343, 1345 (10th Cir. 1999) (holding that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a federal statutory duty concerning the conduct of its own affairs); *Mecca v. United States*, 389 F. App'x 775, 779 (10th Cir. 2010) (unpublished) ("Dr. Mecca's reliance on a federal regulation, without any analogous state law duty, failed to bring the first seven claims within the scope of the FTCA's waiver of sovereign immunity . . . .").

Under Colorado law, a private citizen can bring a negligence action if he can make a prima facie showing of four elements: (1) the defendant owed a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused the injury. *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004) (en banc). "Of these, duty is the threshold element. Only if there is a legal duty to avoid unreasonably risky conduct does the issue of breach and then the other negligence elements arise." *Id.*

The plaintiffs argue that the action should move forward because they have successfully pleaded a claim for negligence under Colorado law. However, they fail to identify the duty of care Ms. Martinez, a federal court reporter, owed under state law. [*See* ECF No. 35 at 12–14]. The allegation that Ms. Martinez breached a statutory duty under the Court Reporters Act does not allege a breach of duty established by Colorado law. If the mere fact that Colorado

recognizes common law negligence as a tort gave rise to an FTCA claim based on a federal

statutory duty, then there would be no limit to the FTCA claims that one could bring.  But that is

not the law.  To sue the United States under the FTCA for negligence, plaintiffs must show that

the court reporter owed an actionable duty to parties to litigation under Colorado law to record

court proceedings perfectly.

So far as our research discloses (and neither party has indicated otherwise) no such duty

has ever been recognized as a matter of Colorado common law.  But, to plaintiffs' benefit (even

though they have not addressed it) I have considered whether there might be a statutory duty in

Colorado on which they could hang their hat.  There is, in fact, a statutory duty in Colorado that

is somewhat similar to the federal statutory duty:

> The shorthand reporter, on the direction of the court, shall take down in shorthand
> all the testimony, rulings of the court, exceptions taken, oral instructions given,
> and other proceedings had during the trial of any cause, and in such causes as the
> court may designate.

C.R.S. § 13-5-127.

Under that statute, at the direction of the court a court reporter is required to record the

proceedings during a trial.  But that begs the question whether Colorado would recognize a

private right of action for damages, sounding in negligence, against a court reporter who

negligently fails to comply with the Colorado statute.

In Colorado, "[a]n implied right of action will not be inferred in a statute unless a clear

legislative intent to create such a cause of action can be discerned."  *Macurdy v. Faure*, 176 P.3d

880, 882 (Colo. App. 2007) (citing *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 923

(Colo. 1997)).  A finding of such a clear legislative intent requires consideration of "(1) whether

the plaintiff is within a class of persons intended to be benefitted by the legislative enactment; (2)

whether the legislature intended to create, albeit implicitly, a private right of action; and (3)

whether an implied civil remedy would be consistent with the purposes of the legislative scheme." *Id.* (numbers added).  I assume, without deciding, that plaintiff Barnes might be within a class of persons intended to be benefited by the statute.  But there is nothing in this statute that suggests a legislative intent to create an implied private right of action to recover damages, nor would an implied civil remedy be consistent with the purposes of the legislative scheme.  The legislation simply outlines the administrative duties of a court reporter.  The sections preceding it outline the duties of the clerks of the court and bailiffs, C.R.S. §§ 13-5-125–126, whereas the section following it provides for the method of compensation for court reporters, C.R.S. § 13-5-128.  The purpose of the legislative scheme is to define the role and duties of court personnel; there is no indication that the legislature intended to provide for private causes of action against court reporters regarding the performance of their duties.

In my own research I did find two cases, both in the Louisiana Court of Appeals, in which negligence actions against state court reporters have been recognized by a state court for unreasonable or unnecessary delays in producing a record.  *Hero Lands Co. v. Borello*, 459 So. 2d 658, 662 (La. Ct. App. 1984); *Easterling v. First of Georgia Underwriters Co.*, 427 So. 2d 4 (La. Ct. App. 1983).  However, the *Hero* court relied in part on a Louisiana statute that required court reporters to furnish a bond "for the faithful performance of his duties" and "for the purpose of protecting litigants against any acts of incompetency or neglect of duty."  459 So. 2d at 662 (citing LSA-R.S. 13L972(B)).  This statute, the court found, "presupposes an action for damages resulting from the court reporter's breach of official duty."  *Id.*  Colorado does not have a similar statute, and C.R.S. § 13-5-127 does not use remotely similar language.  In any event, I am not inclined to assume, based on these cases in a civil law state, that Colorado's appellate courts might recognize a private right of action for damages in Colorado for a violation of C.R.S. § 13-

5-127 when a court reporter simply did not hear and therefore did not record one statement made by a judge during the course of a lengthy trial.  In short, the FTCA does not provide plaintiffs a key to the courthouse in this case.

**ORDER**

1. Defendants' Motion to Dismiss [ECF No. 32] is GRANTED.  Plaintiffs' claims and this civil action are dismissed with prejudice.

2. Defendants are awarded their reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

3. Defendants' Motion to Stay Discovery [ECF No. 34] is DENIED AS MOOT.

DATED this 9th day of May, 2014

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge